UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL D. JORDAN #376733,

        Plaintiff,        Case No. 2:10-cv-12

v.        Honorable R. Allan Edgar

GARY CAPELLO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael D. Jordan filed this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names Defendants Warden Gary Capello, Deputy Warden Linda Tribley, Resident Unit Officer Christopher Charles, Assistant Resident Unit Supervisor Scott E. Dewar, and Resident Unit Officer D. Gill. In his complaint, Plaintiff asserts that he was assaulted by Defendants Charles and Gill in violation of his Eighth Amendment rights and that, when he notified Defendants Capello, Tribley and Dewar, they failed to take corrective action.

Specifically, Plaintiff alleges that on October 26, 2009, he was escorted from the showers to his cell by Defendants Charles and Gill. Plaintiff states that when he was placed in his cell, Defendant Charles pulled Plaintiff's right arm hard against the cell door slot, cutting Plaintiff's right wrist. On November 13, 2009, Plaintiff was subdued and restrained by Defendant Gill and Resident Unit Officer Pelto. While Plaintiff was in restraints, Defendant Charles jumped on Plaintiff, pressing all his weight on the handcuffs in order to inflict injury on Plaintiff. Plaintiff claims that this destroyed tendons and ligaments and has caused permanent damage to Plaintiff's left

hand. Plaintiff asserts that the amount of force used by Defendant Charles was excessive, as Plaintiff was already subdued. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

On December 13, 2010, the court dismissed Plaintiff's claims against Defendants Capello, Tribley and Dewar and ordered service on Defendants Charles and Gill (docket #5 and #6). On February 28, 2012, the court denied Defendants' first motion for summary because it was persuaded that granting Defendants' motion for summary judgment without allowing some discovery would be premature (docket #39).

Presently before the Court is the Defendants' Second Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #55). Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately,

the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff is claiming that Defendants Charles and Gill violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Defendants assert that they are entitled to summary judgment because they applied only the force necessary to control Plaintiff when he assaulted an officer on two occasions. As with the previous motion for summary judgment, Defendants offer copies of major misconduct tickets and hearing reports for misconducts received on October 26, 2009, and November 13, 2009, as well as their affidavits detailing the events. (Defendants' Exhibits C-D.) On October 26, 2009, Plaintiff received three separate misconduct tickets. The first was for the destruction and / or misuse of property and asserted that Plaintiff refused to return a pair of arm restraints, and that when the restraints were returned, Plaintiff had broken the strap and bent the restraints. Plaintiff was found guilty of this misconduct following a hearing. (Defendants' Exhibit C.)

The second misconduct ticket was issued for disobeying a direct order and assault and battery on staff. Plaintiff was found guilty and in the reasons for finding, the hearing officer stated:

> Prisoner says the Misconduct Report is a lie, but the reporter details convincingly that he told prisoner to place his right arm out of the slot and allow the reporter to remove the restraints. Prisoner heard and understood the reporter as evidenced by his reply, "I'm not giving them back." Prisoner voluntarily failed to comply with the order of the reporter by not allowing the reporter to remove the restraints. The staff witness statement is consistent with the Misconduct Report.
>
> Prisoner says that staff members were assaulting him, but even a prisoner witness says that the reporter kept pulling on the slots to make it look like something was going on. It is likely that something was going on, as both the reporter and staff describe that prisoner grabbed the reporter's left hand and attempted to pull the reporter's arm into the slot. The reporter and staff witness were closer to prisoner and better able to observe prisoner than prisoner witnesses. Prisoner's action was an intentional, non-consensual touching of another person done either in anger or with the purpose of abusing or injuring another.

(Defendants' Exhibit C.)

Finally, Plaintiff received a disobeying a direct order misconduct for his refusal to go to the back of his cell and place his hands on the wall. During the hearing, Plaintiff asserted that MDOC policy did not require him to go to the back of his cell. However, the Hearing Officer found that the order was reasonable, that Plaintiff could have complied with the order, and that he refused to do so. Plaintiff was found guilty. (Defendants' Exhibit C.)

In addition, Defendants attest that on October 26, 2009, they were escorting Plaintiff back from the shower. Once Plaintiff was inside his cell, Defendant Charles attempted to remove Plaintiff's restraints while Defendant Gill held onto the lead strap. As Defendant Charles was trying to remove the restraints, Plaintiff was attempting to grab Defendant Charles by the arms through the cell door slot, which required Defendant Gill to hold onto the strap until Defendant Charles could clear his arms from the slot. Once Defendant Charles' arms were clear, Defendant Gill let go of the strap. (Defendants' Exhibit A, ¶¶ 5-6; Defendants' Exhibit B, ¶¶ 5-6.)

With regard to the November 13, 2009, incident, Defendants attest that they, along with Resident Unit Officer Pelto, were taking Plaintiff to be placed in a different housing unit cell. Defendants Charles and Gill placed Plaintiff's property in his cell while Pelto held onto the strap attached to the restraints. Once the property had been placed in the cell, Plaintiff pulled away from Resident Unit Officer Pelto and attempted to kick Defendant Charles in the midsection. Plaintiff continued to resist staff until they were able to gain control over him by placing him on the floor. Additional staff were required to secure Plaintiff's cell. (Defendants' Exhibit A, ¶ 8; Defendants' Exhibit B, ¶ 7.)

Defendants also attach a copy of Plaintiff's deposition testimony, which was taken on May 29, 2012:

Q.   On that incident, you say that Charles jumped and placed all his weight on your handcuffs damaging tendons and ligaments in your arm?

A.   **That's right.**

Q.   This was after they got you back into your cell?

A.   **That's correct.**

Q.   You didn't try and kick one of the officers?

A.   **No, I can't recall if that happened or not because – I mean, if you had – if they had the video, they had to have a camera on me, if they had the video, maybe that could answer your question.**

Q.   Well, I am actually trying to figure out what your memory of it was though. You don't recall kicking one of the officers?

A.   **No, I don't.**

Q.   Do you recall getting misconduct tickets for kicking an officer?

A.   **No.**

(Plaintiff's deposition, p. 40, Defendants' Exhibit E.)

        Plaintiff's deposition testimony continued:

Q.   So why did Officer Charles come in? Were you straining or pulling against the restraints?

A.   **I was laying face down on the floor with my hands – I was in restraint with my hands behind my back. When Charles jumped on top of me and pressed with all his weight down on my wrist, I was already down on the ground in restraints and Pelto was on top of me the first time.**

Q.   Why did they need to put you face down on the ground?

A.   **You would have to ask him.**

Q.   They just threw you down?

A.   **Right.**

Q.   Out of the blue?

A. **Right.**

Q. You didn't kick one of them?

A. **I can't recall.**

Q. You recall everything else but you don't recall why you kicked them or if you did or not?

A. **They say I did.**

Q. I know they said you did but you seem to have a memory block as to whether you did or not. I am just kind of curious if you remember or not.

A. **If they had the video, maybe that would bring my – refresh my memory.**

Q. Yes, but that's not really applicable to this situation. You have the memory of the incident but it seems like your memory is kind of selective, doesn't it?

A. **Selective?**

Q. Well, you don't remember whether or not you kicked somebody but you do remember them slamming you down to the ground. Normally –

A. **It's available, when they have a videotape available, a camera every time –**

Q. Are you refusing to answer my question, Mr. Jordan?

A. **No, I am not.**

Q. It seems like you are following with something that is not applicable. I am asking you why is your memory not that good as to whether or not you kicked one of the officers but you can recall in very good detail that you were thrown down to the ground? You don't have an answer?

A. **If you were face down on the ground, wouldn't you remember being down on the ground?**

Q. Right. But you would also probably recall why they did that. Now, it's important to this case whether or not they used force because you tried to kick somebody or whether they just slammed you down to the ground; wouldn't you agree that's an important detail?

A. **Yeah, it's an important detail.**

Q. If they threw you down on the ground out of the blue, that would be malicious intent, but if you kicked them, then that would be excusable, right?

    **A.**        **Yeah.**

    Q.        You don't have a memory of it?

    **A.**        **No, I don't remember kicking on them.**

    Q.        Kicking who?

    **A.**        **Kicking anyone.**

    Q.        Do you remember the misconduct ticket you were written up?

    **A.**        **I don't have the misconduct ticket with me.**

    Q.        That's not my question. I asked you if you remembered it.

    **A.**        **No, I don't.**

(Plaintiff's deposition, pp. 47-49, Defendants' Exhibit E.)

        Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

        Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat

"reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346.

Defendants assert that with regard to the October 29, 2009 incident, Defendant Charles merely reacted to having his arm pulled through the slot by pulling back to free himself from Plaintiff. In finding Plaintiff guilty of assault and battery on staff, the Hearing Officer stated that staff testified that Plaintiff refused to return his restraints and that he attempted to pull Defendant Charles' arm into the slot by grabbing his left hand. The Hearing Officer noted that Plaintiff's witnesses observed Defendant Charles pulling on the slots "to make it look like something happened," which is also consistent with Defendant Charles assertion that Plaintiff grabbed his hand and he was attempting to pull free. Plaintiff has failed to come forward with any additional evidence supporting his claim that he was subjected to excessive force on October 29, 2009. In addition, a progress note written by Debra A. Seigneur, R.N., on October 29, 2009, notes that Plaintiff suffered a "superficial abrasion" to his right wrist as a result of being uncooperative with custody staff. (Defendants' Exhibit F, p. 3 of 9.) Because there is no genuine issue of material fact with regard to this claim, the undersigned recommends that Defendants' request for summary judgment be granted.

As to the November 13, 2009 incident, Defendants assert that the need for force is readily apparent from Plaintiff's assault on Defendant Charles. The record shows that Plaintiff kicked Defendant Charles in his right hand, and that staff then took Plaintiff to the ground and applied leg irons as a result of Plaintiff's action. During his deposition, Plaintiff was repeatedly questioned about whether he had kicked Defendant Charles and, rather than denying that he had kicked Defendants Charles, Plaintiff stated that he did not remember. As noted by Defendants,

Plaintiff has never denied that he kicked Defendant Charles, nor has he offered any evidence showing that he did not act in the manner alleged by Defendants.

Moreover, the record shows that Plaintiff was examined by Anne M. Morin, R.N., on November 13, 2009, after being "taken down by custody after kicking an officer and sustained left wrist injury." (Defendants' Exhibit F, p. 4 of 9.) Plaintiff's wrist was x-rayed, which showed no injury. (Defendants' Exhibit F, pp. 5 and 8 of 9.) Plaintiff was examined by Paul D. Peterson, R.N., for complaints of pain and numbness on December 1, 2009. Nurse Peterson noted that Plaintiff's left wrist had a small amount of swelling, but no contusion. Plaintiff was instructed to use cold packs and Motrin. (Defendants' Exhibit F, pp. 5-7 of 9.) On May 24, 2010, Plaintiff was seen by Physician's Assistant Margaret Comfort, who stated that his wrist x-ray was negative and that his left hand had full range of motion and that it was able to readily grip. (Defendants' Exhibit F, p. 9 of 9.) The court notes that Plaintiff's lack of serious injury supports Defendants' claims that they did not engage in excessive force. Because there is no genuine issue of material fact that Defendants engaged in excessive force against Plaintiff on November 13, 2009, the undersigned recommends that Defendants be granted summary judgment on this claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances

two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' second motion for summary judgment. Accordingly, it is recommended that Defendants' Second Motion for Summary Judgment (docket #55) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: September 12, 2012